UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 16-35 JGB (KKx) | Date | May 5, 2016 |
| Title | *Derrick Byrd v. Masonite Corporation et al.* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiff's Motion to Remand (Doc. No. 26); and (2) VACATING the May 9, 2016 Hearing (IN CHAMBERS)

Before the Court is Plaintiff's Motion to Remand. (Doc. No. 26.) The Court finds this matter appropriate for resolution without a hearing. After consideration of the papers filed in support of and in opposition to the motion, the Court DENIES the motion. The May 9, 2016 hearing is VACATED.

## I. BACKGROUND

On November 17, 2015, Plaintiff Derrick Byrd ("Plaintiff") filed a putative class action in California Superior Court for the County of Riverside against his employer, Defendant Masonite Corporation ("Defendant" or "Masonite"), and fictitious Defendants 1 through 100. (See "Complaint," Doc. No. 1-1.) The Complaint alleges eleven causes of action: (1) unpaid overtime, Cal. Lab. Code §§ 510, 1198; (2) unpaid meal period premiums, Cal. Lab. Code §§ 226.7, 512(a); (3) unpaid rest period premiums, Cal. Lab. Code § 226.7; (4) unpaid minimum wages, Cal. Lab. Code §§ 1194, 1197, 1197.1; (5) final wages not timely paid, Cal. Lab. Code §§ 201, 202; (6) wages not timely paid during employment, Cal. Lab. Code § 204; (7) non-compliant wage statements, Cal. Lab. Code § 226(a); (8) failure to keep requisite payroll records, Cal. Lab. Code § 1174(d); (9) unreimbursed business expenses, Cal. Lab. Code § 1174(d); (10) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (11) a representative action pursuant to California's Private Attorney's General Act ("PAGA"), Cal. Lab., Code §§ 2698 et seq. On January 6, 2016, Masonite removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (See "Notice of Removal," Doc. No. 1.)

On January 13, 2016, Masonite filed a motion to dismiss the Complaint, (Doc. No. 12), which the Court granted with leave to amend on February 25, 2016, (Doc. No. 24). On March 18, 2016, Plaintiff filed a First Amended Complaint. ("FAC," Doc. No. 25.) The FAC alleges the same eleven wage and hour causes of action against Masonite as were alleged in the Complaint.

On March 18, 2016, Plaintiff filed a motion to remand the action to California Superior Court for the County of Riverside.[1] ("Mot.," Doc. No. 26.) Masonite opposed the motion on March 28, 2016. ("Opp.," Doc. No. 27.) In support of its opposition, Masonite submitted the Declaration of Lucy Rebelo. ("Rebelo Decl.," Doc. No. 28.) On April 4, 2016, Plaintiff filed a reply memorandum. ("Reply," Doc. No. 32.)

## II.    LEGAL STANDARD

CAFA vests federal district courts with original jurisdiction of any class action in which minimal diversity of citizenship exists between at least one member of the putative class and at least one defendant, the class consists of at least 100 members, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). A defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). Evidence establishing the amount in controversy is only required when the plaintiff contests, or the court questions, the defendant's allegation. (Id.)

When a plaintiff contests a defendant's allegation that the amount in controversy exceeds $5 million, a defendant seeking removal must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional threshold. Dart Cherokee, 135 S. Ct. at 553-54. A defendant can satisfy this burden by submitting evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). The amount-in-controversy requirement is "tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

The removal statutes are construed restrictively, however, and the district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); 28 U.S.C. § 1447(c). However, no presumption against removal exists in cases invoking CAFA, which

---

[1] In violation of this Court's Standing Order, Plaintiff failed to submit chambers copies of any document. Plaintiff is warned that any future failure to abide by this Court's Standing Order or the Local Rules of this District shall result in the imposition of sanctions.

Congress enacted to facilitate adjudication of certain class actions in federal court. Dart Cherokee, 135 S. Ct. at 554.

### III.   DISCUSSION

Plaintiff contends that Masonite has failed to prove by a preponderance of the evidence that the amount in controversy is greater than $5 million. (Mot. at 7.) Masonite disagrees. (Opp. at 5-25.) Because CAFA jurisdiction is determined at the time of removal, the Court looks to the Complaint to determine whether CAFA jurisdiction exists. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1091 (9th Cir. 2010).

**A.  Waiting Time Penalties**

Labor Code section 203[2] provides that if an employer willfully fails to pay any wages of an employee who is discharged or quits, the wages of the employee shall continue to accrue as a penalty from the date due up to and including thirty days thereafter. Cal. Lab. Code § 203. Plaintiff seeks section 203 penalties pursuant to his fifth cause of action for final wages not timely paid. (Complaint ¶¶ 88-93.) The Complaint alleges, "During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Complaint ¶ 90.) "Defendants' failure to pay Plaintiff and the other class members who are no longer employed by Defendants' their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code sections 201 and 202," and therefore entitles Plaintiff and the class members to statutory penalties pursuant to section 203. (Id. ¶¶ 91, 92.) Plaintiff seeks the statutory penalty wages for himself and the other class members "each day they were not paid, up to a thirty (30) day maximum…" (Id. ¶ 93.)

Defendant contends that Plaintiff's section 203 claim places $598,718.40 in controversy. (Opp. at 20.) Of Masonite's non-exempt, hourly-paid employees in California, 173 either quit or

---

[2] Unless otherwise noted, all references to "section" shall refer to the California Labor Code.

were discharged between November 17, 2012 to January 11, 2016.³ (Rebelo Decl. ¶ 4(d).)⁴ The average hourly rate of pay for Masonite's non-exempt, hourly-paid employees in California during the relevant time period was $14.42. (Id. ¶ 4(f).) Plaintiff and the putative class members are typically scheduled for eight hour shifts, five days a week. (Id. ¶ 6.) Masonite calculated its estimate of the amount in controversy by multiplying the average hourly rate of pay by 8 hours a day for each of the 173 employees and assumed that each of the terminated employees were owed the maximum penalty of 30 days' wage. (Opp. at 20.)

It is not unreasonable to assume that every non-exempt employee terminated during the statutory period would have experienced at least one violation – and therefore would not have been paid certain wages due – because the Complaint alleges that Masonite "engaged in a uniform policy/practice of wage abuse," which involved failing to pay its employees "for all regular and/or overtime wages earned, missed meal periods and rest breaks in violation of California law." (Complaint ¶ 31.) The Complaint further alleges that, "[a]t all material times," Defendants: (1) failed to pay earned overtime wages to Plaintiff and the class members; (2) failed to provide meal breaks and rest periods to Plaintiff and the class members; and (3) failed to pay Plaintiff and the class members minimum wages. (Id. ¶¶ 43-45.) Other courts have allowed 100% violation rate assumptions in similar situations where plaintiffs alleged a "laundry list" of potential violations. See Varsam v. Lab. Corp. of Am., No. 14CV2719 BTM JMA, 2015 WL 4199287, at *4 (S.D. Cal. July 13, 2015); see also Mejia v. DHL Express (USA), Inc., No. CV 15-890 GHK, 2015 WL 2452755at *5-6 (C.D. Cal. May 21, 2015) (allowing 100% violation rate assumption for waiting time violations). Notably, Plaintiff fails to assert any different rate of violation or submit evidence indicating a different rate of violation. See Unutoa v. Interstate Hotels and Resorts, Inc., No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512 at *3 (C.D. Cal. March 3, 2015) (denying motion to remand, noting "Plaintiff fails to assert any different rate of violation or submit evidence indicating a contrary rate…"); see also Lopez v. Aerotek, Inc., No.

---

³ Plaintiff filed his Complaint in state court on November 17, 2015. (See Complaint.) The statute of limitations in California for claims based on the nonpayment of wages is three years. Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1398 (2010) (affirming that Cal. Code Civ. Proc. § 338 applies to section 203 claims). Therefore, the relevant period for calculation of the amount in controversy for this claim began November 17, 2012. Plaintiff defines the proposed class period as extending after the date of filing "to final judgment." (Complaint ¶ 13.) As such, extending the relevant period to January 11, 2016, the date through which Lucy Rebelo ran the queries on Masonite's electronic payroll and human resources systems, is appropriate.

⁴ The Court finds that the Declaration of Lucy Rebelo is the kind of "summary-judgment-type" evidence contemplated by the Ninth Circuit in Ibarra. 775 F.3d at 1197. Rebelo described her employment relationship with Masonite, detailed the software systems she accessed to retrieve the data relied upon, and declared that, under her direction, "queries were run which we ordinarily rely upon in the course of business, to identify all employees working in non-exempt hourly-paid positions in California" during various time periods. (Rebelo Decl. ¶ 4.) Accordingly, the Court finds her declaration does not lack foundation and is properly supported by personal knowledge. Cf. Townsend v. Brinderson Corp., No. CV 14–5320 FMO, 2015 WL 3970172, *5 (C.D. Cal. June 30, 2015).

SACV 14–803 CJG, 2015 WL 2342558, at *3 (S.D. Cal. May 21, 2015) (denying motion to remand, noting "although afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

Plaintiff has alleged a broad, uniform policy of multiple Labor Code violations. For the limited purpose of assessing the amount in controversy, it is reasonable to assume from Plaintiff's allegations and lack of evidence submitted to the contrary, that each of the 173 terminated employees experienced at least one violation during his or her employment with Masonite and therefore was owed wages upon termination. See Ibarra, 775 F.3d at 1198. (holding that the amount-in-controversy requirement can be calculated "using reasonable assumptions underlying the defendant's theory of damages exposure"); see also Unutoa v. Interstate Hotels and Resorts, Inc., No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512 at *3 (C.D. Cal. March 3, 2015) ("defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation").

Further, it is not unreasonable for Masonite to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations. The Complaint alleges Masonite "[a]t all material times" failed to pay Plaintiff and other class members "all wages owed to them upon discharge or resignation." (Complaint ¶ 46). See Tajonar v. Echosphere, LLC, No. CV 14-2732 LAB, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty). Plaintiff does not allege or submit any evidence indicating that Masonite at any time paid any terminated employee wages due after the class member's termination but before the thirty-day statutory period expired. Accordingly, the Court finds Michaels's assumption of the thirty-day maximum wage penalty reasonable.[5] The amount in controversy for the fifth cause of action for final wages not timely paid is **$598,718.40**.

---

[5] Plaintiff relies on Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994 (9th Cir. 2007) to support the contention that assuming maximum waiting time penalties is "problematic" because it lacks "competent evidence." (Mot. at 14-16.) In Lowdermilk, the Ninth Circuit found that a declaration from a human resource employee was insufficient to prove that the CAFA jurisdictional amount was met "to a legal certainty." 479 F.3d at 999, 1001. In this case, Defendant's burden is to prove the amount in controversy by a preponderance of the evidence, not to a legal certainty. See Dart, 135 S.Ct. at 553; see also Ibarra, 775 F.3d at 1196 (recognizing Lowdermilk overruled). Plaintiff also relies on Garibay v. Archstone Cmtys, 539 Fed. Appx. 763 (9th Cir. 2013). In Garibay, the Ninth Circuit found that the defendant provided no basis to assume that each putative class member would seek maximum waiting time penalties. Id. at 764. Unlike Garibay, in this case Defendant's assumptions are not inconsistent with Plaintiff's allegations. Because the Court has found that it is reasonable to assume that all putative class members have not been paid all of their overtime and meal and rest break wages, it is reasonable to assume that all terminated employees of Masonite would have had those unpaid wages withheld after their employment ended and still not paid up to the maximum thirty-day period. See Mejia, 2015 WL

### B. Meal and Rest Break Violations

Labor Code section 226.7 provides that if an employer fails to provide meal or rest periods as mandated by the Industrial Welfare Commission ("IWC"), the employer must pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided. Plaintiff's second and third causes of action allege that Masonite required Plaintiff and the other class members to work during meal periods and rest periods and did not compensate them for the work performed during that time. (Complaint ¶¶ 62-81.)

Defendant contends that the amount reasonably placed in controversy by these causes of action is $12,377,983.80. (Opp. at 13.) In support of this calculation, Masonite stated that during the period from November 17, 2011 through January 11, 2016,[6] Masonite employed 642 non-exempt, hourly-paid employees in California who together worked a total number of 85,839 workweeks. (Rebelo Decl. ¶ 4(a).) These employees earned an average hourly wage of $14.42. (Id. ¶ f(f).) Masonite then assumed that each of these 642 putative class members suffered one meal period violation a day and one rest break violation a day in each of the 85,839 workweeks, for a total of five meal period violations and five rest period violations per workweek. (Opp. at 13.) This amounted to $6,188,991.90 for the meal period violation claim (5 violations x 1 hour premium pay x $14.42 average hourly wage x 85,839 weeks) and the same amount for the rest period claim.

Plaintiff alleges that "[a]t all material times" Masonite failed to provide "uninterrupted meal and rest periods to Plaintiff and the other class members." (Complaint ¶ 44.) This failure

---

2452755, at *6; see also Long v. Destination Maternity Corp., No. 15CV2836-WQH-RBB, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) ("Defendant's estimates [of a 100% violation rate and a maximum waiting time penalty] are reasonable based on the allegations that Defendant failed to pay Plaintiff and class members their wages after leaving Defendant's employ and that Defendant has still not paid Plaintiff and class members all wages they were entitled to.").

[6] Although the statute of limitations for claims brought pursuant to section 226.7 is three years, see Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1111 (2007) (finding that the "one additional hour of pay" due to employees pursuant to section 226.7 is a "wage" and not a "penalty," and thus is governed by the three-year statute of limitations), unlawfully withheld wages may be recovered as a restitutionary remedy pursuant to a UCL claim, and as such, the UCL's four-year limitations period governs a UCL action based on a failure to pay wages, see Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163 (2000). Here, Plaintiff seeks restitution of unpaid wages on behalf of himself and all other class members pursuant to California's UCL. (Complaint ¶ 63.) Therefore, the relevant period for Plaintiff's meal and rest break claims, which are claims for the recovery of wages, begins November 17, 2011. As stated previously, the extension of the period through January 11, 2016, the day Ms. Rebelo ran the queries on Masonite's electronic payroll and human resources systems, is appropriate because the putative class period extends through "final judgment." (See Complaint ¶ 13.)

was due to Masonite's "uniform policy/practice of wage abuse." (Id. ¶ 31.) Masonite allegedly "knew or should have known" that Plaintiff and the other class members were entitled to receive meal and rest breaks, yet it "intentionally and willfully" required Plaintiff and the class members to work during meal and rest periods without proper compensation. (Id. ¶¶ 34, 35, 67-70, 77-79.) There is no allegation that Plaintiff or the class members were ever permitted to take a meal period or rest period or that the deprivation of their mandated breaks was only occasional. Plaintiff offers no alternative violation rate.

Plaintiff contends that the use of Masonite's assumed violation rate of one meal period and one rest period per day is unreasonable. (Reply at 5.) Plaintiff relies on Ibarra for the proposition that assuming meal and rest break violations occurred on every shift is unreasonable where the complaint "alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." (Mot. at 12-13, citing Ibarra, 775 F.3d at 1199.) Although this case is factually distinguishable from Ibarra, because unlike Ibarra, Plaintiff does allege that Masonite failed to provide meal and rest periods "[a]t all material times," suggesting universal violations, the Court agrees that assuming a violation rate of one missed meal period and one missed rest period every day is unreasonable. However, the Court does not agree with Plaintiff that no other reasonable alternative violation rate exists.

Rather, the Court finds reasonable the assumption that each putative class member missed one meal break and one rest period per workweek. The allegations in the Complaint are similar to those in Garza v. Brinderson Constructors, Inc., No. 15-CV-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016). In Garza, the plaintiff alleged that he "regularly" missed meal breaks and that defendants maintained a "policy or practice" of both meal and rest break violations. 2016 WL 1298390, at *3. The court found these allegations sufficient to ground an assumption of one violation per week for the plaintiff's meal and rest claims. Id. Similarly, Plaintiff alleges that Masonite "engaged in a uniform policy/practice of wage abuse" against their employees, and that "[a]t all material times" Masonite failed to provide meal and rest breaks to Plaintiff and the other class members. (Complaint ¶¶ 37, 44.) The Court finds these allegations support the assumption that each class member missed one meal period and one rest period per week. See Campbell v. Vitran Exp., Inc., 471 Fed. Appx. 646, 649 (9th Cir. 2012)[7] (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint because it alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods" and class representatives had testified in depositions that they were "never" allowed to take meal or rest breaks); see also Arreola v. Finish Line, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation once per week").

---

[7] The Court notes that Campbell is an unpublished Ninth Circuit case. Campbell is cited as persuasive authority only, pursuant to Ninth Circuit Federal Rule of Appellate Procedure 36-3(b) as an unpublished disposition issued after January 1, 2007.

Using Masonite's data, the Court calculates the amount in controversy for Plaintiff's meal period violation claim as follows: $14.42 average hourly rate multiplied by 1 violation per week for each of the 85,839 workweeks during the relevant period for a total of $1,237,798. This same calculation applies to Plaintiff's rest period violation claim for a total amount of **$2,475,596.76** for Plaintiff's meal and rest break claims.

### C. Overtime Wages

Labor Code section 510 states that any work in excess of eight hours in a day or forty hours in a week shall be compensated at a rate of no less than one and a half times the regular rate of pay for an employee. See Cal. Lab. Code § 510(a). Plaintiff alleges, "[a]t all material times set forth herein, Defendants failed to pay overtime wages to Plaintiff and the other class members for all hours worked. Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation." (Complaint ¶ 43.) Plaintiff's first cause of action seeks to recover unpaid overtime compensation. (Id. ¶ 61.)

Masonite calculates that this cause of action reasonably places $928,348.79 in controversy. (Opp. at 16.) Masonite assumed that each of the 642 putative class members[8] are owed one hour of unpaid overtime per pay period at a rate of $21.63 per hour (one and a half times the average hourly rate of $14.42). These employees worked a total of 85,839 workweeks and were paid every two weeks. (Rebelo Decl. ¶¶ 4(a), 5.) Therefore, $21.63 x (85,839/2) = $928,348.79.

Plaintiff contends that this calculation is too speculative because it is not supported by evidence. (Reply at. 10.) Plaintiff offers no alternative violation rate. As another court in this circuit has noted, "how often Plaintiff claims [he] was made to work overtime is uniquely within Plaintiff's possession." Patel v. Nike Retail Servs., Inc., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014). Here, the Complaint alleges a seemingly universal violation rate when it states Masonite failed to pay overtime wages to Plaintiff and the other class members "[a]t all material times," pursuant to a "uniform policy/practice of wage abuse." (Complaint ¶¶ 31, 43.) Given these allegations, Masonite's estimate that each putative class member is owed one hour of overtime for every two weeks worked is conservative. See Patel, 58 F. Supp. 3d at 1042 (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); see also Oda v. Gucci Am., Inc., No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); Ray v. Wells Fargo Bank, N.A., No. CV 11-01477 AHM JCX, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding

---

[8] For the same reason Plaintiff's meal and rest break claims are subject to the four-year limitations period under the UCL, so is Plaintiff's claim for unpaid overtime wages. See supra, fn. 6; Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163 (2000). As such, the relevant statutory period began November 17, 2011. From November 17, 2011 through January 11, 2016, Masonite employed 642 non-exempt, hourly-paid employees in California. (Rebelo Decl. ¶ 4(a).)

reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

Accordingly, the Court finds that Plaintiff's first cause of action for unpaid overtime reasonably places **$928,348.79** in controversy.

### D. Wage statements

Labor Code section 226 states that employers are required to provide an accurate, itemized statement in writing each pay period detailing, among other things, all wages earned, hours worked, and all applicable hourly rates in effect during that period. See Cal. Lab. Coe § 226(a). If the employer violates any of the provisions in section 226, each individual employee is entitled to $50 for the initial pay period in which a violation occurred and $100 for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e). Thus, an individual employed for at least 41 pay periods wherein each wage statement contained inaccurate information would be entitled to the statutory maximum penalty of $4,000.

Plaintiff's seventh cause of action alleges that Masonite issued Plaintiff and the other class members wage statements that were not compliant with California law. (Complaint ¶¶ 45-50.) The Complaint alleges that Masonite "knew or should have known that Plaintiff and the other class members were entitled to receive complete and accurate wage statements… but, in fact, they did not receive complete and accurate wage statements." (Id. ¶ 39.) Masonite's failure to provide complete and accurate wage statements allegedly occurred "at all material times." (Id. ¶ 48.)

Masonite contends that Plaintiff's claim that Masonite issued wage statements in violation of section 226 places $2,048,000 in controversy. (Opp. at 22-23.) Masonite actively employed 512 non-exempt, hourly-paid employees in California from November 17, 2014 to January 11, 2016.[9] (Rebelo Decl. ¶ 4(c).) During this period, these employees received a total of 12,961 wage statements. (Id.) To get to $2,048,000, Masonite assumed a 100% violation rate for every wage statement and that each of the 512 employees is entitled to the statutory maximum penalty of $4,000. (Opp. at 23.)

The Court finds Masonite's assumption of a 100% violation rate reasonable. Courts in this district have found the amount in controversy satisfied where a defendant assumes a 100%

---

[9] Plaintiff filed his Complaint in state court on November 17, 2015. (See Complaint.) California imposes a one-year statute of limitations for statutory penalties, including the penalties provided for in section 226. See Cal. Code Civ. Proc. § 340. Therefore, the relevant period for calculation of the amount in controversy for this claim began November 17, 2014. As stated previously, the extension of the period through January 11, 2016, the day Ms. Rebelo ran the queries on Masonite's electronic payroll and human resources systems, is appropriate because the putative class period extends through "final judgment." (See Complaint ¶ 13.)

violation rate based on allegations of a "uniform" illegal practice, or other similar language, and where the plaintiff offers no evidence rebutting this violation rate. See e.g., Amaya v. Consolidated Container Company, LP, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 at *2 (C.D. Cal. July 28, 2015); Unutoa v. Interstate Hotels and Resorts, Inc., No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512 at *2-3 (C.D. Cal. March 3, 2015); see also Ibarra, 775 F.3d at 1199 (suggesting that an allegation that the defendant "universally, on each and every shift" would be sufficient to ground an assumed 100% violation rate).

Masonite's assumption of a 100% violation rate of section 226 is supported by allegations in the Complaint. The Complaint alleges Masonite "engaged in a uniform policy/practice of wage abuse against their hourly-paid or non-exempt employees" (Complaint ¶ 31, emphasis added.) Further, it states, "[a]t all material times set forth herein, Defendants failed to provide complete or accurate wage statements to Plaintiff and the other class members." (Id. ¶ 48, emphasis added.) This language is not ambiguous. It accuses Masonite of issuing inaccurate wage statements "at all material times" and in regards to both Plaintiff and the class members. Plaintiff does not propose an alternative violation rate. The Complaint's claim for non-complaint wage statements therefore explicitly alleges universal violations of section 226 during the statutory period. See Amaya v. Consolidated Container Company, LP, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) (finding that a defendant can rely on the complaint's allegations to ground assumed rates of violation); see also Mejia v. DHL Express (USA), Inc., No. CV 15-890 GHK, 2015 WL 2452755 at *4 (C.D. Cal., May 21, 2015) (finding a defendant's use of a 100% violation rate reasonable where the plaintiff's complaint did not contain any allegations to suggest that a 100% violation rate is an impermissible assumption).

Finding that the assumption of a 100% violation rate is reasonable, the Court turns to Masonite's assumption that all 512 employees would be entitled to the statutory maximum penalty of $4,000. To reach $4,000, an employee would have to work 41 pay periods during the relevant time period ($50 for the initial wage statement violation, $100 for each subsequent wage statement violation). See Labor Code § 226(e). Ms. Rebelo's declaration does not state how many pay periods the 512 employees worked. Masonite issues wage statements on a bi-weekly basis. (Rebelo Decl. ¶ 5.) Assuming all 512 employees were employed for the duration of the relevant period, this means that each employee could have only worked a maximum of 30 pay periods.[10] This is less than the 41 pay periods necessary to be entitled to the maximum statutory penalty of $4,000. Accordingly, using Masonite's data, the correct calculation for the total potential penalties is $1,270,200 [($50 x 512 employees for initial violations) + ($100 x 12,446 remaining wage statements for subsequent violations)]. See Phan v. Sears, Roebuck & Co., No. 515CV02582ODWKK, 2016 WL 1408057, at *2 (C.D. Cal. Apr. 11, 2016) (calculating the statutory penalty for a section 226 wage statement claim where the potential class members did not work sufficient pay periods to earn the statutory maximum penalty). The Court therefore

---

[10] There are 60 weeks between November 17, 2014 and January 11, 2016. Because the employees were paid every two weeks, each employee could have at most received 30 wage statements.

finds that Plaintiff's non-compliant wage statement claim reasonably places **$1,270,200** in controversy.

Because the amount in controversy for the waiting time penalties, unpaid meal and rest period wages, unpaid overtime wages, and non-compliant wage statement penalties totals **$5,272,863.95** the Court need not analyze Masonite's estimates of unpaid minimum wage violations or attorneys' fees.  The Court notes that because this calculation does not take into account all of Plaintiff's claims, the amount in controversy is in fact much higher than $5 million.

### E.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand.  (Doc. No. 26.)  The May 9, 2016 hearing is VACATED.

**IT IS SO ORDERED.**